S92A0252. ALFORD v. PUBLIC SERVICE COMMISSION et al.
(418 SE2d 13)

FLETCHER, Justice.

This appeal concerns the interpretation of the involuntary separation retirement provisions of OCGA § 47-2-123 (g) and (h).[1] Judy Alford worked as confidential secretary to Public Service Commissioner Ford Spinks from 1976 to his retirement in 1988. In 1989, the PSC transferred her to a position as an entry level file clerk with a reduction of $1,151.50 in her annual salary.[2] Alford filed for involuntary separation benefits with the Employees' Retirement System of Georgia, which denied her benefits on the grounds that she had not been terminated. Alford filed a petition for writ of mandamus and complaint for damages in superior court. The trial court granted the retirement system's and the PSC's motions to dismiss. Alford appeals.

Alford contends that she is the subject of a discretionary termination under OCGA § 47-2-123 (g) because the PSC did not reappoint her as a confidential secretary but instead placed her in a position with reduced pay and responsibilities. She argues that the term "fail to reappoint" refers to the failure to reappoint a confidential employee to her confidential position. Alternatively, Alford contends that she has the right under subsection (h) to a position comparable to a confidential secretary. The state, on the other hand, argues that "fail to reappoint" means the failure to reappoint to any state position regardless of pay and responsibilities. The state concludes that

---

[1] This appeal affects the limited number of state employees who were employed by March 31, 1972, and who are the subject of a discretionary termination. See OCGA § 47-2-123 (a) & (g) (4).

[2] Since Alford appeals from the grant of the state's motion to dismiss under OCGA § 9-11-12 (b) (6), we must construe the pleadings in the light most favorable to her with all doubts resolved in her favor. *DeKalb County v. Ga. Paperstock Co.*, 226 Ga. 369, 370 (174 SE2d 884) (1970).

Alford has not been discretionarily terminated because she has been reappointed to a state position. Adopting neither position, we find that Alford is not entitled to involuntary separation benefits and reverse and remand for further action consistent with this opinion.

1. OCGA § 47-2-123 (g) generally prohibits involuntary separations from state government that would trigger the payment of early retirement benefits. It provides that a state employer shall not "release or separate from state service, or fail to reappoint to continued state service" any employee who would be entitled to collect involuntary separation benefits. Subsection (g) lists four exceptions to this general prohibition, including an exclusion for discretionary terminations. The statute defines "discretionary termination" as the

> [s]eparation or release from service of an official or employee, or failure of reappointment of an official or employee, who holds a confidential position to an appointed or elected public official, . . . incurred as a result of a change of administration in the office of such appointed or elected public official.

OCGA § 47-2-123 (g) (4) (C). When an employee becomes subjected to a discretionary termination, subsection (h) requires the commissioner of personnel administration to seek continued employment for the employee at the "same or greater" annual compensation and with duties that are "reasonably compatible with the previous work experience and educational qualifications" of the employee. OCGA § 47-2-123 (h) (2) (A) & (B).[3]

(a) In construing a statute, the cardinal rule is to glean the intent of the legislature. *State v. Mulkey*, 252 Ga. 201, 202 (312 SE2d 601) (1984); *Bd. of Trustees v. Christy*, 246 Ga. 553, 554 (272 SE2d 288) (1980). Language in one part of the statute must be construed " 'in the light of the legislative intent as found in the statute as a whole.' " *Christy*, 246 Ga. at 554 (quoting *Williams v. Bear's Den, Inc.*, 214 Ga. 240, 242 (104 SE2d 230) (1958)). The legislative history of subsections (g) and (h) shows that the General Assembly enacted them to restrict retirement benefits based on involuntary separation from employment with the state. See 1984 Ga. Laws 1726 (now Ga. Const., Art.

---

[3] Subsection (h) (2) provides:
Any position for continued employment of the official or employee proposed for discretionary termination which is obtained by the commissioner of personnel administration shall meet the following requirements:
(A) The annual compensation for such position shall be the same or greater than the current annual compensation of the official or employee proposed for discretionary termination;
(B) The duties for such position shall be reasonably compatible with the previous work experience and educational qualifications of the official or employee proposed for discretionary termination.

III, Sec. X, Par. VI (1991 Supp.)); 1984 Ga. Laws 1296, 1305-1309 (codified at OCGA § 47-2-123 (g) & (h)). The General Assembly intended subsection (h) "to provide procedures to secure the continued employment of officials and employees who may become subject to discretionary termination"; it did not intend to "create any right to continue in a position of employment." OCGA § 47-2-123 (h) (6).

Construing subsections (g) and (h) together, we conclude the General Assembly intended for the state to retain employees eligible for involuntary separation benefits, but required the state to offer a reasonably comparable job at the same pay to any employee subject to a discretionary termination. The General Assembly could not have intended that a former "confidential secretary" be thrust into the involuntary "confidence" of a stranger, as Alford argues. To create a "confidential" relationship, just as to perform a well-known Latin dance, takes two. Therefore, we hold that the phrase "fail to reappoint" in subsection (g) means the failure to reappoint an employee to another state position at the same pay and with reasonably compatible duties.

(b) Because of two rules of statutory construction, we reject the state's interpretation that an employee is never released, separated, or not reappointed under subsection (g) as long as the employee continues to work for the state. First, when the General Assembly amends a statute, the latest declaration controls. *Christy*, 246 Ga. at 555. Thus, subsections (g) and (h), which were passed in 1984, control over the general statutory definition of "involuntary separation." See OCGA § 47-2-1 (20), (21). Second, where there are two possible constructions of a retirement statute, we must construe the statute liberally in favor of the employee. *Employees Retirement System v. Baughman*, 241 Ga. 339, 341 (245 SE2d 282) (1978).

Although the state is correct that the statute does not require the PSC to reappoint Alford as a confidential secretary, the PSC must offer her a job with reasonably compatible duties and at the same pay as her former secretarial job. See *Bennett v. Bd. of Trustees*, 258 Ga. 201, 202 (366 SE2d 287) (1988) (holding employee was not involuntarily separated when he was offered both a comparable job with greater salary potential and a job within the classification he sought but in another location); see also *Bd. of Trustees v. Englade*, 256 Ga. 458, 458-459 (349 SE2d 703) (1986) (finding refusal of offer of another position within the same department at the same wage but with altered responsibility would be a voluntary termination). If the General Assembly had intended, as the state argues, that employers could reassign employees who are discretionarily terminated to menial jobs with reduced pay, it would not have enacted the requirements of subsection (h) (2). The state's interpretation would render subsection (h) meaningless.

2. Because the statute seeks to secure the continued employment of persons who are the subject of discretionary terminations and the state appellate courts have not previously interpreted subsections (g) and (h), the PSC must be given the opportunity to offer Alford another agency job. The state benefits by keeping a skilled employee with more than 20 years of state experience; Alford benefits by remaining employed in a job that takes advantage of her talents and pays her a salary commensurate with her abilities; the public and other state employees benefit by avoiding the payment of early retirement benefits.

Neither the PSC nor the commissioner is required to offer Alford a confidential position to another elected or appointed official. The maximum entitlement of Alford under the statute is compensation equal to her prior position and duties that are consistent with her training and education.

*Judgment reversed and remanded. All the Justices concur, except Bell, P. J., and Sears-Collins, J., who concur in the judgment only.*

DECIDED JULY 7, 1992 —
RECONSIDERATION DENIED JULY 30, 1992.

*Amy M. Totenberg*, for appellant.
*Michael J. Bowers, Attorney General, Charles M. Richards, Senior Assistant Attorney General, Susan L. Rutherford, Assistant Attorney General*, for appellees.