WRIGHT *v.* FORRESTER, revenue commissioner.

No. 13851.   SEPTEMBER 10, 1941.   REHEARING DENIED OCTÒBER 14, 1941.

*Alex. McLennan* and *Herman Talmadge,* for plaintiff.

*Ellis G. Arnall, attorney-general, Andrew J. Tuten* and *Claude Shàw; assistant attorneys-general,* for defendant.

ATKINSON, Presiding Justice.   In section 20 of the general tax act òf 1927 (Ga. L. 1927, pp. 56, 62) a tax was imposed on persons carrying on specified businesses in cities, graduated in amount on the basis of population of the cities. · On January 10, 1928, J. ·C. Wright and òthers brought suit to enjoin collection of taxes so·imposed upon them, the ground of complaint being that the section ·20. of the act· was unconstitutional. ·The suit on final trial June· 4; ·1929, was terminated by a decree of the supérior court holding the act unconstitutional and enjoining collection of the tax. In the interim between commencement and termination of the suit, on threat by the officers to exact twenty per cent. penalty, and to prosecute him criminally, Wright paid $1200 taxes on October 10, 1928, and an additional $1200 on April 10, 1929, aggregating $2400 all of which went into the treasury of the State.   Each year after the decree Wright demanded from the State refund of the amount so paid.   The demand was never refused, and, though recognized by the State officials, was never paid.   On January 6, 1937, the comptroller-general of the State, on petition of Wright setting forth his claim, certified the claim to the Governor, recommending payment of the principal sum with such interest as is authorized

by law. On January 14, 1937, the claim was attached as a part of a message by the Governor to the General Assembly, in which it was stated: "I am attaching a file, . . showing certain taxes that have been paid into the State treasury under laws that have since been declared unconstitutional. There is no provision, without an act of the legislature, to pay these taxes to these debtors of the State who have paid these unconstitutional taxes. This is a moral obligation of the State. I hereby recommend legislative action to provide for the repayment of these amounts." House Journal 1937, volume 1, pp. 565-567. In compliance with the recommendation, the legislature, in the passage of the act entitled "An act to make comprehensive provision for an integrated tax administration for Georgia; to create the Department of Revenue and the office of State revenue commissioner; to confer upon such commissioner all the powers and duties formerly vested in the State Revenue Commission and in the comptroller-general in relation to petroleum inspection, licenses and taxation," etc., included the section 34. Ga. L. Ex. Sess. 1937-1938, pp. 77, 94, 95; Code Supp. § 92-8436.

In pursuance of the section 34 of this act, Wright filed with the State revenue commissioner his claim for refund of the taxes, and prayed that the claim be approved and that an itemized requisition be drawn on the Governor, showing claimant's name and the amount of refund and the reason therefor. The commissioner, on May 27, 1941, denied the claim for refund and the prayer for requisition to the Governor for refund of the amount. After such denial and refusal Wright on May 29, 1941, instituted mandamus proceedings against J. M. Forrester as State revenue commissioner, seeking to compel him to approve the above-mentioned claim, and issue an itemized requisition of the Governor for a treasury warrant for the refund of $2400 and interest in the amount of $1981. The petition as amended alleged in substance all that is stated above. The defendant interposed a general demurrer, complaining "that the petition is insufficient in law, and does not set forth any cause of action against defendant." The only special ground of demurrer was met by amendment to the petition. The judge sustained "the general demurrer" and dismissed the action. The plaintiff excepted.

1. The action is for mandamus instituted in 1941 by a tax-

payer against the State revenue commissioner to compel approval of a claim and a request for the Governor to issue a warrant to refund certain sums illegally exacted under an alleged unconstitutional statute and paid into the treasury of the State in 1928 and 1929.

2. The action was brought under section 34 of the act approved January 3, 1938 (Ga. L. Ex. Sess. 1937-1938, pp. 77, 94, 95; Code Supp. § 92-8436), wherein it is provided: "Refunds.

"(a) Appropriation. There is hereby appropriated from the proceeds of every tax and license imposed by law a sum sufficient to refund to taxpayers any and all such taxes which may be determined to have been erroneously or illegally assessed and collected from such taxpayers under the laws of Georgia, whether paid voluntarily or involuntarily. Such refunds shall be drawn from the treasury on warrants of the Governor issued upon itemized requisition showing in each instance the person to whom the refund is to be made, the amount thereof, and the reason therefor.

"(b) Procedure for Granting. In any case in which it shall be determined that an erroneous or illegal collection of tax or license has been made by the commissioner, the taxpayer from whom such tax or license was collected may file a claim for refund with the said commissioner in writing and in such form and containing such information as the commissioner may require, to include a summary statement of the grounds upon which the taxpayer relies. In the event the taxpayer desires a conference or hearing before the commissioner in connection with any claim for refund, he shall so specify in writing in the claim, and if the claim conforms with the requirements of this section, the said commissioner shall grant such a conference at a time he shall specify. The commissioner shall consider information contained in taxpayer's claims for refund and such other information as may be available and shall approve or disapprove the taxpayer's claim and notify such taxpayer of his action. In the event any claim for refund is approved, the commissioner shall forthwith proceed under subsection (a) of this section to give effect to the terms thereof. Provided further, that the taxpayer whose claim for refund is denied by the commissioner under the terms of this act shall have the right to sue for refund in the superior court of the county in which said taxpayer would have a right to appeal from a judgment by the Board of Tax Appeals, as in this act provided."

This law appropriates funds authorized to be drawn from the treasury on warrants issued by the Governor sufficient to refund taxpayers any and all taxes which may be determined to have been erroneously or illegally assessed and collected "whether paid voluntarily or involuntarily." The law also authorizes aggrieved taxpayers to file with the State revenue commissioner (that office being elsewhere created by the act) their claims for refund, and makes it the duty of that officer, to audit and pass on the merits of the claims from the standpoint of law and fact, and to "approve or disapprove" the claims. Such approval or disapproval is not a matter of discretion of the commissioner. In event of approval of the claim the commissioner shall request a warrant from the Governor for payment of the amount from the treasury.

If the claim is disapproved (denied) by the commissioner, the taxpayer "shall have the right to sue" the State for the refund. The money having been paid into the State treasury is no longer within the power or control of the commissioner. See Code, § 2-1811. The State is the real party at interest on the question of refund, and the quoted statute does not impose any further duty on the commissioner where he denies the claim. It will not be assumed that if a money judgment is rendered against the State under this statute for refund of taxes illegally collected which finally establishes or liquidates the claim, the Governor would refuse to issue a warrant for its payment out of the treasury.

3. "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." Code, § 64-101. "The right to extraordinary aid of mandamus exists only where the applicant has a clear legal right to the relief sought and there is no other adequate remedy. These two conditions must coexist." *Lindsey* v. *Board of Commissioners of Colquitt County,* 169 *Ga.* 368 (150 S. E. 261).

On application of the foregoing principle in connection with the provisions of the section 34 of the act approved January 3, 1938, as quoted and construed in the preceding notes, the petition as amended did not state a cause of action for a writ of mandamus absolute against the respondent. Consequently the judge did not

err in denying the prayers of the petition, and dismissing the action on general demurrer.

*Judgment affirmed. All the Justices concur.*