S98G0155. NATIONAL HEALTH NETWORK, INC. v. FULTON COUNTY et al.
S98G0408. DeKALB COUNTY et al. v. BRIAN REALTY CORPORATION.
(514 SE2d 422)

FLETCHER, Presiding Justice.

The property owners in these cases both filed an action seeking a property tax refund under OCGA § 48-5-380. In the DeKalb County case, Brian Realty challenged the tax assessor's failure to consider conditions attached to the property's zoning in assessing value; in the Fulton County case, National Health Network challenged the county's failure to consider the property's existing use. The issue on appeal is whether either property owner has raised a claim of an erroneous or illegal assessment under the tax refund statute. Because the property owners have not established that the counties assessed or collected an erroneous or illegal tax, we conclude that they are not entitled to a refund under OCGA § 48-5-380. We affirm in the Fulton County case and reverse in the DeKalb County case.

Brian Realty paid property taxes in 1992 on 72 acres of unimproved land, known as the Lake Hearn property, that were assembled in the 1980s for commercial development.[1] It did not appeal the assessed value of the property at that time. Later, the realty com-

---

[1] See *DeKalb County v. Albritton Properties*, 256 Ga. 103 (344 SE2d 653) (1986).

pany filed this action contending that it was entitled to a refund under § 48-5-380 based on the tax assessor's failure to consider that the property had conditions placed on its Office-Institutional zoning. The trial court granted summary judgment to the county, and the Court of Appeals reversed.[2] The court reasoned that the tax assessor had to consider the zoning conditions to ascertain value and reversed the grant of summary judgment because there was an issue of fact concerning whether the assessor had considered the existing zoning conditions in making the 1992 assessment.

In the Fulton County case, National Health Network paid its assessed taxes in 1991 without appealing the county's valuation of its property. Three years later, it filed a refund claim arguing that the tax assessor failed to consider the existing use of the property. The trial court granted summary judgment to the county and the Court of Appeals of Georgia affirmed.[3] The court held that National Health did not meet the requirements for a refund action under § 48-5-380, the assessor's failure to consider existing use did not make the method of assessment incorrect, and the taxpayer had to challenge the assessment in an appeal under § 48-5-311. We granted certiorari in both cases to consider whether the court of appeals correctly construed OCGA § 48-5-380, the tax refund statute.

1. The Georgia Code presents two procedures for challenging ad valorem property taxes. OCGA § 48-5-311 provides for appeals of issues related to the assessed value of property. A taxpayer may first appeal an assessment to the county board of tax assessors[4] and, if still dissatisfied after the board acts, the taxpayer may appeal to the county board of equalization or arbitration challenging matters of taxability, uniformity of assessment, and value.[5] This procedure provides an expedited process of review in an informal administrative proceeding.[6] If the taxpayer disagrees with the equalization board's decision, he may appeal to the superior court. This appeal process "is intended to provide the most expeditious resolution of a taxpayer's dissatisfaction with an assessment, preferably before taxes are paid."[7]

The second procedure provides for the refund of property taxes that have been erroneously or illegally assessed and collected. Subsection (a) of OCGA § 48-5-380 provides:

---

[2] *Brian Realty Corp. v. DeKalb County*, 229 Ga. App. 185 (493 SE2d 595) (1997).

[3] *National Health Network v. Fulton County*, 228 Ga. App. 584 (492 SE2d 333) (1997).

[4] OCGA § 48-5-306 (b).

[5] OCGA § 48-5-311 (e) & (f).

[6] *Gwinnett County v. Gwinnett I Ltd. Partnership*, 265 Ga. 645, 646 (458 SE2d 632) (1995).

[7] Id.

> Each county [or] municipality may refund to taxpayers any and all taxes and license fees which are determined to have been erroneously or illegally assessed and collected from the taxpayers under the laws of this state or under the resolutions or ordinances of any county or municipality or which are determined to have been voluntarily or involuntarily overpaid by the taxpayers.

This provision provides taxpayers a limited remedy to recover illegal or erroneous taxes after they have been paid.[8]

In interpreting statutes, the courts must search for the legislative intent, "keeping in view at all times the old law, the evil, and the remedy."[9] In 1975, the General Assembly enacted the refund statute to give each county the authority to refund taxes that were overpaid, "whether paid voluntarily or involuntarily."[10] During the early 1970s, several taxpayers filed law suits challenging their county's ad valorem tax digest as illegal.[11] Although this Court eventually struck down the tax digests on the grounds that they created different classes of tangible property in violation of the Georgia Constitution,[12] the taxpayers were not always able to recover the illegal taxes they had paid.[13] Thus, the legislature enacted § 48-5-380 to overcome the rule that a taxpayer could not recover a voluntary payment of taxes.[14]

In *Gwinnett County v. Gwinnett I Limited Partnership*, we addressed the interplay between the assessment appeal statute and the refund statute. Although a taxpayer may raise issues of valuation, uniformity, and equalization under both statutes, we explained that the taxpayer should assert any error in the assessment of the real property in an appeal proceeding under § 48-5-311 whereas the refund action under § 48-5-380 is reserved for claims of factual or legal error that have resulted in erroneous or illegal taxation.[15]

---

[8] Id. at 646-647; see *National Health*, 228 Ga. App. at 585 (*Gwinnett I* severely limited the circumstances under which a refund action could be pursued).

[9] OCGA § 1-3-1.

[10] See 1975 Ga. Laws 774 (1975) ("Each county and municipal corporation of this State is hereby authorized to refund to taxpayers any and all taxes and license fees which may be determined to have been erroneously or illegally assessed and collected . . . or overpaid by such taxpayer, whether paid voluntarily or involuntarily.").

[11] See, e.g., *Griggs v. Greene*, 230 Ga. 257 (197 SE2d 116) (1973).

[12] See id. at 264-266 (affirming injunction against enforcement of state revenue commissioner's orders requiring counties to raise assessments by various percentages depending on sub-classes of property).

[13] See, e.g., *Blackmon v. Ewing*, 231 Ga. 239, 242 (201 SE2d 138) (1973); see also *Wright v. Forrester*, 192 Ga. 864 (16 SE2d 873) (1941) (describing taxpayer's decade-long effort to recover refund for unconstitutional business tax).

[14] See *Town of Lyerly v. Short*, 234 Ga. 877, 879 (218 SE2d 588) (1975).

[15] *Gwinnett I*, 265 Ga. at 646-647.

> A claim based on mere dissatisfaction with an assessment, or on an assertion that the assessors, although using correct procedures, did not take into account matters which the taxpayer believes should have been considered (e.g., different comparable sales for the purpose of establishing value), is not, however, one which asserts that an assessment is erroneous or illegal within the meaning of § 48-5-380.[16]

In that case, we concluded that the county was entitled to summary judgment because the taxpayer was seeking a refund based on a disagreement with the amount of the assessed value.[17]

2. In these two cases, we must address the meaning of the statutory phrase "erroneously or illegally assessed and collected." An illegal tax assessment is one imposed without authority or in violation of federal or state law. An erroneous tax assessment is harder to define; it includes clerical errors, assessments of tax-exempt property, and assessments based on the wrong millage rate, but not assessments based on the county's failure to consider every relevant fact in establishing an assessed value.[18]

Understanding these definitions may become easier by considering examples of illegal and erroneous assessments and collections. A claim for a tax refund would be proper in the following situations:

(1) a taxing authority assessed and collected taxes in violation of federal[19] or state law;[20]

(2) a taxpayer asserts that the property assessed was exempt from taxation;[21]

---

[16] Id. at 647.

[17] See also *DeKalb County v. Genuine Parts Co.*, 225 Ga. App. 376, 378 (484 SE2d 57) (1997) (holding that taxpayer was barred from seeking tax refund for motor vehicles when it failed to inform county that vehicles were used in interstate commerce, a fact that the county would have considered in determining the amount of the tax assessment).

[18] See *Gwinnett I*, 265 Ga. at 647.

[19] See *Dennison Manufacturing Co. v. Wright*, 156 Ga. 789 (120 SE 120) (1923) (holding state occupation tax was illegal when exacted from company engaged exclusively in interstate commerce); *City of College Park v. Atlantic Southeastern Airlines*, 194 Ga. App. 637 (391 SE2d 460) (1990) (holding that tax assessment based on airlines' total gross receipts violated federal law and thus was illegal). See generally *Reich v. Collins*, 513 U. S. 106, 111 (115 SC 547, 130 LE2d 454) (1994) ("the average taxpayer reading [the Georgia income tax refund statute] would think it obvious that state taxes assessed in violation of federal law are 'illegally assessed' taxes").

[20] See *Griggs v. Greene*, 230 Ga. at 266 (holding constitutional requirement of uniformity violated when state ordered counties to adjust their tax digests by raising assessments according to sub-classes of property); *Wright v. Forrester*, 192 Ga. at 867 (taxpayer has the right to sue for refund of state tax collected on businesses collected under unconstitutional statute).

[21] See *Marconi Avionics, Inc. v. DeKalb County*, 165 Ga. App. 628 (302 SE2d 384) (1983) (holding that taxpayer could file a refund action challenging the taxability of property when taxpayer later discovers property was not properly subject to taxation); see also *Southeast-*

(3) a county or city applied the wrong millage rate to the assessed value;[22]

(4) a taxpayer made duplicate payments or paid taxes to the wrong taxing authority;[23]

(5) a county or city collected property taxes for land that was located in another county or owned by a different person;[24] or

(6) the county committed a clerical error, such as listing the wrong assessed value.[25]

This list is not intended to be exhaustive, but merely illustrates examples found in the case law.

3. In reviewing a grant of summary judgment, we must construe the evidence in the light most favorable to the taxpayers as the losing parties. Accordingly, we assume that DeKalb County failed to consider conditions attached to the zoning of the Lake Hearn property and Fulton County did not consider the existing use of National Health's property in assessing value.[26]

Despite these facts, we conclude that neither taxpayer has brought a claim for an erroneous or illegal tax assessment under the refund statute. They do not allege that the counties did not have authority to impose the tax, committed a clerical error, or collected a wrongly assessed tax. Instead, both claims fall within our description in *Gwinnett I* of "an assertion that the assessors, although using correct procedures, did not take into account matters which the taxpayer believes should have been considered" in determining the assessed value.[27]

We reject the argument that a county's alleged failure to consider factors listed in OCGA § 48-5-2 that are relevant to fair market value makes the assessed value "factually inaccurate" as that term is

---

*ern Maritime Co. v. Collins*, 258 Ga. 725, 725-726 (374 SE2d 197) (1988) (holding that taxpayer entitled to refund of sales tax paid for tax-exempt services); *Hawes v. Shepherd Constr. Co.*, 117 Ga. App. 842, 844 (162 SE2d 231) (1968) (holding taxpayer entitled to refund of motor fuel tax paid for fuel that came within tax exemption for construction vehicles); *Utah Parks Co. v. Iron County*, 380 P.2d 924 (Utah 1963) (holding that property tax was erroneously and illegally levied and collected when ownership was transferred to a tax-exempt body prior to the assessment).

[22] See *Town of Lyerly*, 234 Ga. at 878-879 (ten-mill levy not authorized by law).

[23] See *Marconi*, 165 Ga. App. at 630 (concluding refund action not limited to acts of a clerical nature, such as duplicate payments); 1984 Atty. Gen. Op. 84-24 (suggesting that insurance companies could seek premium tax refund when taxes paid directly to city and county governments rather than the state insurance commissioner).

[24] See *Webb v. Coweta County*, 178 Ga. App. 170 (342 SE2d 345) (1986) (taxpayer brought refund action for taxes paid to Coweta County on land located in Heard County).

[25] See *Cleveland Elec. Illuminating Co. v. Collins*, 357 N.E.2d 1101 (Ohio 1976) (refund authorized when county auditor erroneously listed property's assessed value at $973,390, rather than the correct figure of $97,340).

[26] See OCGA § 48-5-2 (3) (B) (listing factors tax assessor shall consider in determining fair market value).

[27] See *National Health*, 228 Ga. App. at 586.

used in *Gwinnett I.* Even if it did, the assessor's failure to consider a specific factor would not transform the county's assessment process into an illegal procedure. To the extent the taxpayers here assert that Fulton and DeKalb Counties did not consider factual matters that would have affected the valuation of the property, their remedy was to appeal the assessment to the county board of tax assessors and present their facts in support of a lower value.[28] Taxpayers cannot use the refund statute, with its three-year statute of limitations, to gain a belated opportunity to litigate the assessed value of their property.

Because the court of appeals correctly held that National Health did not meet the criteria for bringing a refund action, we affirm its decision in the Fulton County case. We reverse its decision in the DeKalb County case, however, since Brian Realty has not presented a claim for an erroneous or illegal assessment under the state refund statute.

*Judgment affirmed in Case No. S98G0155 and reversed in Case No. S98G0408. All the Justices concur.*

DECIDED MARCH 15, 1999 —
RECONSIDERATION DENIED APRIL 1, 1999.

*Case No. S98G0155*

*W. Wheeler Bryan, Scott M. Dixon, Marie B. Hannon,* for appellant.

*Jacqueline S. Groover, Thomas A. Cox, Jr., Vernitia A. Shannon,* for appellees.

*Case No. S98G0408*

*Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell,* for appellants.

*Hunter, MacLean, Exley & Dunn, Thomas L. Hawker,* for appellee.

---

[28] See *Genuine Parts*, 225 Ga. App. at 378 & n.2 (holding that taxpayers barred from bringing refund action alleging county failed to consider interstate use of vehicles since taxpayers failed to appeal assessment and inform county of that fact).